# NOVEMBER TERM, 1914.                257

*87 N. J. L.* | Coyne v. Penna. R. R. Co.

JOHN E. COYNE, ADMINISTRATOR, APPELLANT, v. PENN-
SYLVANIA RAILROAD COMPANY, RESPONDENT.

Submitted December 3, 1914—Decided March 1, 1915.

Where a boy fifteen years of age had for years been in the habit of
carrying his father's supper to him to the train of the Central
railroad of New Jersey as it stopped at the South Amboy station;
and where it appeared that the roadbed and station were the
property of the New York and Long Branch Railroad Company,
and were used by the Central railroad and the Pennsylvania rail-
road under an agreement for the operation of their trains; and
that a rule of the railroad owner required all trains approaching
the station, where a passenger train has stopped to receive or
discharge passengers, to stop before reaching the station until
signaled to move, or until the passenger train shall have moved
away, and that the deceased on the night in question was struck
by a light engine which approached the station without warning.
*Held*, that the issue of negligence thus presented was a jury
question.

On appeal from the Middlesex County Circuit Court.

For the plaintiff, *John A. Coan.*

For the defendant, *Theodore Strong.*

The opinion of the court was delivered by

MINTURN, J.   The plaintiff was nonsuited at the Circuit
on this state of facts.   Daniel Coyne, a boy fifteen years of
age, while in the act of crossing the southbound track of
the New York and Long Branch Railroad Company, at the
South Amboy station, about eight o'clock at night, on Jan-
uary 23d, 1912, was killed by an engine of the defendant
company, and the plaintiff as his administrator, brings this
suit to recover damages under the provisions of the Death act.

The boy, as had been his habit for some years, was at the
time of the accident in the act of carrying supper to his
father, who was an engineer on the train of the Central rail-
road of New Jersey, whose engine at that time with its train

had stopped on the northerly track at the South Amboy station, as one of its scheduled stops on its way to New York. To reach the northerly track the boy was obliged to cross the southbound track from the station. The engine which caused his death was attached to an ordinary tender, and in railroad vernacular was termed a light engine. It had its headlight burning, and was proceeding down the southbound track at a speed of about eight or ten miles an hour. The roadbed in question was the property of the New York and Long Branch railroad, and was used by the Pennsylvania railroad and the New Jersey Central railroad under an operating agreement with the New York and Long Branch railroad. One of the traffic rules of this railroad was as follows:

"Any train approaching a station where a passenger train is receiving or discharging passengers, must be stopped before reaching the station, and must not proceed until a signal has been received to do so, or until the passenger train moves away, except where proper safeguards are provided between the tracks. Inferior trains will avoid delay to superior, and local trains will, as far as possible, avoid detention to express trains."

It was in evidence that upon this occasion no signal of the approach of the light engine was given. It was also in evidence that the practice of the boy in bringing the father his supper had been indulged in for years, and, therefore, presumably was known to and recognized by the Central Railroad Company, as an incident of the business made necessary by the exigencies of the father's occupation, when he reached his home station, in driving the train. The case presented, therefore, a situation of two licensees occupying and using a common property, under an established rule of operation, which under the testimony was known and recognized not only by the two operating railroads, but by their employes and others, whose business required them to take notice of existing conditions at that point. The contention of the defendant which was made the basis of the nonsuit was that the deceased was guilty of contributory negligence in not perceiving the engine with a headlight in view, and be-

cause no negligence was shown upon defendant's part. The character of legal duty owed to the deceased by the defendant, under the circumstances, must be determined by the legal relation he occupied with reference to the defendant.

Upon that theory the defendant insisted that the plaintiff occupied the *status* of a trespasser, or at most that of a mere licensee, with duties upon the part of the plaintiff and obligations upon the part of the defendant correspondingly co-extensive. But if the plaintiff's legal *status* be viewed in the light of the peculiar circumstances which on the night in question occasioned his visit to the premises, it may well be that the jury might ascribe to him the *status of a licensee* or an invitee. They might fairly infer that the long continued course of conduct which he pursued was not only known to both railroads using the station, and to the Long Branch railroad, but was acquiesced in by them as a usual and necessary incident of the railroad business, from which an implied invitation to so use the premises might be said to exist. 29 *Cyc.* 457, and cases cited; *Christopher* v. *Russell,* 63 *Fla.* 191; 28 *Am. & Eng. Anno. Cas.,* and notes 564.

So it has been held that one who goes upon the vehicles or premises of a carrier to transact business with it, or its agents, or to transact business in the operation of the road, or who is there by invitation of the carrier, express or implied, is lawfully there, and the carrier owes him the duty at least of using reasonable or ordinary care for his safety. 4 *R. C. L.* 502, and cases cited.

If we accord to the deceased the *status* of a licensee, the duty upon the part of the owner of the premises extends no further than to refrain from acts willfully injurious. *Philips* v. *Library Co.,* 55 *N. J. L.* 307.

But the present case presents not an attempt to hold the owner of the land liable, but an effort to hold a licensee liable for damages to an alleged co-licensee, for an act performed while exercising its privileges as such licensee, at a time and under circumstances which a jury might characterize as negligent.

As was said by Mr. Justice Swayze for this court in *Guinn*

v. *Delaware and Atlantic Telephone Co.,* 72 *N. J. L.* 276, where the deceased was killed by coming in contact with an electric wire in an open field, commonly used by the public and the defendant company: "If (deceased were) a bare licensee he would still be there lawfully. If a trespasser, his wrong would be to the landowner alone, not a public wrong nor a wrong to the defendant."

In the more recent case of *Duel* v. *Mansfield Plumbing Co.,* 86 *N. J. L.* 582, Mr. Justice Garrison, speaking for this court said: "A motion for a nonsuit, and for the direction of a verdict were based on the contention that the plaintiff was a mere licensee upon the premises to whom the duty of exercising reasonable care was not owed by the defendant. This contention was clearly erroneous. The duty of one licensee to use reasonable care not to injure other licensees is laid down by our cases under a variety of circumstances." Citing *Guinn* v. *Delaware and Atlantic Telephone Co., ubi supra; Meyer* v. *Benton,* 74 *N. J. L.* 533; *Jansen* v. *Jersey City,* 61 *Id.* 243; *Travisano* v. *Stefanelli,* 84 *Id.* 764.

This disposition of the main contention renders it necessary to do more than to consider the remaining contention of the defendant that the deceased by his conduct contributed to his death, and that the plaintiff, therefore, is barred of recovery.

A recurrence to the facts contended for by plaintiff shows that the New York and Long Branch railroad had established the rule referred to, not only for the operation of the trains of the railroad, but doubtless primarily for the safety and protection of the public who might have occasion, as passengers or otherwise, to be lawfully upon the premises; and that the deceased in performing the duty with which he was charged, had for years crossed these tracks, presumably relying upon the observance of the rule by the railroad; that the light engine which caused the damage came upon him without notice or warning in violation of this rule. This situation makes it manifest that the issue presented was essentially one of fact. This issue is palpably accentuated by the defendant's contention that the deceased ran up the track

NOVEMBER TERM, 1914. 261

with his head down; that the headlight and other lights were burning, and that if deceased had exercised ordinary care for his safety he could have seen the engine over two thousand feet up the track.

The solution of an inquiry of that nature has repeatedly been determined by this court to be the office of the jury, and not of the court. *Guinn* v. *Delaware and Atlantic Telephone Co., ubi supra; Munroe* v. *Pennsylvania Railroad Co.,* 85 *N. J. L.* 688.

The judgment therefore will be reversed, and a *venire de novo* awarded.

*For affirmance*—THE CHIEF JUSTICE, PARKER, BERGEN, HEPPENHEIMER, WILLIAMS, JJ.   5.

*For reversal*—THE CHANCELLOR, GARRISON, SWAYZE, TRENCHARD, MINTURN, KALISCH, BLACK, VREDENBURGH, WHITE, TERHUNE, JJ.   10.